**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:15-cr-375 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ANETAEUS SPENCER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Now before the Court is the counseled motion of defendant Antaeus Spencer ("Spencer") for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 63 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 67 ["Opp'n"]), and Spencer has filed a reply. (Doc. No. 68 ["Reply"].) For the reasons that follow, Spencer's motion is DENIED.

**I. BACKGROUND**

On October 14, 2015, Spencer was indicted on two counts of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and four counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. No. 1 [Indictment].) On February 25, 2016, pursuant to a plea agreement, Spencer entered a plea of guilty to four of the six counts in the Indictment. (2-25-2016 Minutes; Doc. No. 23 [Plea Agreement].)

On June 8, 2016, the Court sentenced Spencer to a term of 151 months imprisonment. (6-

8-2016 Minutes; Doc. No. 40 [Judgment].) Spencer is currently serving his sentence at FCI McKean and has a projected release date of November 13, 2025. *See* https://www.bop.gov/inmateloc/ (last visited 6-3-2020).

On April 13, 2020, Spencer filed a *pro se* motion for a compassionate release due to COVID-19. (Doc. No. 55.) In support, he cited generally the circumstances surrounding the pandemic and specially the effectiveness of the efforts by staff at his facility to slow the spread of the virus. Spencer did not, however, indicate that he had any risk factors that made him especially susceptible to COVID-19.

In an opinion, dated April 21, 2020, the Court denied Spencer's motion without prejudice, finding that he had not satisfied the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A), in that he had not either fully exhausted his administrative remedies or thirty days had passed since he had submitted a request for a compassionate release without a response from the warden of his facility. *See United States v. Spencer*, No. 1:15-cr-375, 2020 WL 1930167, at *2–3 (N.D. Ohio Apr. 21, 2020); (Doc. No. 58). The Court also held, as it had previously on numerous occasions, that the exhaustion requirements of § 3582(c)(1)(A) cannot be judicially waived.[1] *Spencer*, 2020 WL 1930167, at *2–3; *see United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *4 (E.D. Tenn. May 13, 2020) (noting that "most courts to examine the issue in [the Sixth Circuit] have agreed" that § 3582(c)(1)(A)'s exhaustion requirements cannot be waived)." (collecting cases). On June 2, 2020, the Sixth Circuit likewise held that the exhaustion requirements of § 3582(c)(1)(A) are mandatory and cannot be judicially set aside. *See United States v. Alam*, No. 20-1298, at *2 (6th Cir. June 2, 2020) (recommended

for publication).

On April 24, 2020, Spencer filed a copy of the request for a compassionate release that he submitted to the warden of his facility, as well as the warden's response, dated April 13, 2020, denying his request. (Doc. No. 59.) The warden's response provided instructions for filing an administrative appeal from the warden's decision. (*Id*. at 330[2].) Spencer does not indicate, and there is nothing in the record to suggest, that he has sought an administrative appeal.

## II. DISCUSSION

### A. Exhaustion

As the Court has previously noted in this and other cases, the sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the

---

[1] Additionally, the Court observed that it was without authority, in any event, to provide Spencer with his requested relief—home confinement for the remainder of his sentence. *Id*. at *3.

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

3

First Step Act of 2018 (FSA) amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Spencer claims that he has now satisfied the statutory exhaustion requirements because the warden has denied his request and thirty days has passed since he first submitted that request to the warden. (Mot. at 341–42 ["The exhaustion requirement is satisfied by the passing of 30 days from the date the inmate's request was received by the warden regardless of whether the administrative appeals have concluded."].) There is a split in authority on the question of whether the exhaustion requirement is satisfied simply by making a formal initial request and allowing thirty days to elapse prior to filing suit (regardless of the outcome of the initial request), or whether a response by the warden within 30 days "eliminat[es] the elapse of thirty (30) days as a path to judicial review because this denial, unlike an implicit denial, can be appealed administratively." *See United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *3 (E.D. Tenn. May 13, 2020) (finding inmate who had his administrative request for compassionate release denied by warden within 30 days was required to fully exhaust administrative remedies before filing suit); *see also United States v. Fields*, No. 3:12-cr-00022-JKS-1, 2020 WL 2744109, at *4–5 (D. Alaska May 6, 2020) (noting the split in authority and collecting cases).

The Sixth Circuit appears to have weighed in on this debate over statutory interpretation in favor of finding that the passage of thirty days, regardless of the availability of administrative appeals, triggers an inmate's right to proceed in federal court. *See Alam*, No. 20-1298, at *5 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, *no matter the appeals available to them*.") (emphasis added). In any event, the court in *Alam* also held that the exhaustion requirements in § 3582(a)(1)(A), while mandatory claim-processing rules, are not jurisdictional in nature. *Id*. at *3. Because these statutory exhaustion requirements are not jurisdictional, they bind a court "only when properly asserted and not forfeited." *Id*. (citing *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam)). The government has forfeited any exhaustion argument by failing to address it in its response, and, therefore, the Court finds that it can reach the merits of Spencer's motion.

### B.     Availability of Compassionate Release

There are three components to a compassionate release merits analysis: (1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; (2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and (3) whether defendant would be a danger to the public.

#### 1.     Extraordinary and Compelling Circumstances

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition … that substantially

5

diminishes the ability of the defendant to self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1. While the section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release … because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 447, 499 (S.D. Iowa 2019) (collecting district court cases)). Given this lack of applicable guidance, courts have held that they are not constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by

the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.")

Moreover, in light of the unprecedented circumstances surrounding the COVID-19 pandemic, "[n]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for purposes of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020); *see Bolze*, 2020 WL 2521273, at *7 (noting that "a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19").

In its opposition, the government acknowledges that an inmate with an established risk factor for COVID-19 identified by the Centers for Disease Control and Prevention ("CDC") could satisfy the standard of "extraordinary and compelling reasons," provided the condition reasonably could be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if the condition would not support such a finding absent the risk of COVID-19. (Opp'n at 369, citing U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I)). Nonetheless, the government argues that Spencer's asserted conditions—tachycardia and obesity—"are not among the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19." (*Id*. at 370.)

In his motion, Spencer asserts that he is at a high risk for serious illness from COVID-19, in part, "because he is obese." (Mot. at 347.) The CDC recognizes "severe obesity," which it

7

defines as having a body mass index (BMI) of 40 or higher, as a risk factor for COVID-19.[3] Spencer offers no documentation or support for his claim that he suffers from obesity, let alone that it could be considered "severe" as that term is defined by the CDC and recognized as elevating a risk relative to COVID-19. The Court agrees with the government that Spencer has not established that this asserted condition constitutes an extraordinary and compelling reason for compassionate release. *See, e.g., United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release, in part, because inmate failed to substantiate claims that medical conditions placed defendant at a heightened risk with respect to COVID-19).

The record does support a finding that in 2013 Spencer was diagnosed with supraventricular tachycardia, which is a series of rapid heartbeats that begin in or involve the upper chambers (atria) of the heart, causing the heart to beat ineffectively.[4] (Doc. No. 63-3.) The CDC had identified individuals with "severe heart conditions" as having a heightened risk of becoming seriously ill from COVID-19 and has provided a list of heart conditions that put one at a heightened risk for the virus.[5] Supraventricular tachycardia is not contained in the CDC's arguably non-exhaustive list, so it is not clear whether tachycardia increases one's risk of serious illness from COVID-19. But even assuming that Spencer's heart condition, obesity, and alleged

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited 6-2-2020).

[4] https://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/supraventricular_tachycardia.html (lasted visited 6-2-2020).

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (listing heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension as heart conditions that may put people at higher risk for severe illness from COVID-19) (last visited 6-2-2020).

inability to protect himself by practicing social distancing in the prison setting[6] rises to the level of an extraordinary and compelling reason for compassionate release, this does not end the analysis, as the Court must next consider the § 3553(a) factors.

2. § 3553(a) Factors and the Danger to the Community

Spencer argues that consideration of the relevant § 3553(a) sentencing factors support the Court granting his request for compassionate release. Spencer notes that he has been in custody since November 2015. During that time, he represents that he has participated "in numerous programming to better himself." (Mot. at 347; *see* Doc. No. 63-4 (list of current and completed programming).) He also highlights his BOP progress reports that reflect that his prison conduct has been incident free. (*Id.*; Doc. No. 63-4.) But the compassionate release statute directs courts to consider all of the 18 U.S.C. § 3553(a) sentencing factors "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). Other applicable factors would include the nature and circumstances of the offense, the history of the defendant, and the need for the sentence imposed (to reflect the seriousness of the offense; afford adequate deterrence; protect the public; and provide the defendant with needed education, training, and treatment). Additionally, the Court may only order a compassionate release if it finds that Spencer "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2).

---

[6] As set forth in the government's brief, it appears that the BOP has taken substantial steps to protect inmates from the spread of COVID-19 (Opp'n at 375.)

Spencer received a significant sentence (151 months) of which he has served approximately 55 months. Even with good time credit, he has only served half of his sentence. Two of the four offenses for which he was convicted involved his unlawful possession of multiple weapons and ammunition. (Doc. No. 1 [Indictment].) At sentencing, the Court determined that Spencer qualified as an armed career offender with a lengthy criminal history that included two prior felonious assault convictions, domestic violence, and a history of unlawful possession of firearms and drugs. (Doc. No. 23 [Plea Agreement]; Doc. No. 35 [Final Presentence Investigation Report] at 160–66; Doc. No. 42 (Sentencing Hearing Transcript ["TR"]) at 225–6.) His offense conduct in this case resulted in two, two-level sentencing enhancements because he possessed numerous weapons and ammunition and because one of those firearms—a revolver—was stolen. (TR at 226.)

Spencer does not dispute the seriousness of his crimes, or his extensive history with guns and violence. Instead, he focuses on his rehabilitation efforts in prison that have included fully compliant behavior and successful completion of numerous educational and training courses. (Mot. at 347; Reply at 377.) The Court finds Spencer's prison conduct and his educational pursuits—which have resulted in his obtainment of a G.E.D.—commendable. But much of Spencer's violent past has involved his unlawful possession of weapons and ammunition of which he has no access in prison. The fact that he is thriving in prison, away from any access to weapons and drugs, underscores the need for the sentence the Court imposed to continue to afford Spencer the education and training necessary to prepare him to rejoin society in a non-violent fashion.

Spencer also argues that he will not pose a danger to the community if his motion is

granted because he "is not requesting straight release. Instead, he is requesting to serve the remainder of his time on home confinement." (Reply at 377.) But this Court has already held that it lacks the authority to modify his sentence to provide for home confinement, as he requests, because that authority rests with the BOP. *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Brown*. No. RDB-16-CR-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) (denying a motion for home confinement filed by a prisoner citing concerns over COVID-19 because "[i]t is inherently the authority of the [BOP] to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)"); *United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of 2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original).

The BOP has "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC … to determine which inmates are suitable for home confinement."[7] The BOP has instructed that "inmates do not need to apply to be considered for

---

[7] www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited 6-1-2020). According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*. In fact, under § 12033(b)(2) of the Coronavirus Aid. Relief, and Economic Security Act ("CARES" Act), Pub. L. No. 116-136, enacted March 27, 2020, the Attorney General now has the authority to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place inmates in home confinement under 18 U.S.C. § 3624(c)(2) . . . ."

home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." *Id*. The fact that the BOP continues to identify vulnerable inmates for release to home confinement represents further proof that it is in the best position to quickly consider whether the relief Spencer now seeks is appropriate. *See Alam*, No. 20-1298, at *7 (recognizing that that the system is "working as it should" in that the BOP is actively identifying suitable candidates for home confinement as an alternative to compassionate release).

The Court is sympathetic to Spencer's fear that he will contract COVID-19 in prison. Nonetheless, the Court is constrained to find that the § 3553(a) sentencing factors, as well as the danger he continues to pose to the community, counsel against granting him a compassionate release.

III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Spencer's motion for a compassionate release is DENIED. To the extent that his motion seeks placement in home confinement for the balance of his sentence, his motion is DENIED for want of jurisdiction.

**IT IS SO ORDERED**.


Dated: June 8, 2020

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**